IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VERONA B.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Civ. No. 1:22-cv-01898-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff filed an application for benefits on April 27, 2020, alleging disability as of March 30, 2018. Tr. 182, 336.[2] After a hearing, the Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act (the "Act"). Tr. 22–30. Plaintiff argues the ALJ erred by (1) discounting Plaintiff's subjective symptom testimony; (2) finding only somewhat persuasive the medical opinions of Michael Henderson, D.O., Joel Klein,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

M.D., and Rebecca Meek, WHNP-BC; and (3) rejecting the lay witness testimony. Because the ALJ erred, and because the record is fully developed and requires a finding that Plaintiff is disabled as of September 1, 2018, the Commissioner's decision is REVERSED and this matter is REMANDED for calculation of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five.

2 – OPINION AND ORDER

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

I. **Subjective Symptom Testimony**

Plaintiff first argues the ALJ erred in discounting her subjective symptom testimony. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons

3 – OPINION AND ORDER

why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff testified that she stopped working because she was "full of anxiety" and "just didn't feel well." Tr. 167–68. She testified that her symptoms from her candida were particularly bad around the time she stopped working and that she has been taking supplements but no prescription medications. Tr. 168, 171. Plaintiff stated that she experiences dizziness and fatigue due to her anxiety, although she has not been receiving any mental health treatment. Tr. 169, 173. Plaintiff stated that her symptoms would worsen if she returned to work; even something as simple as a schedule would give her anxiety and affect her sleep. Tr. 174. She testified that her

4 – OPINION AND ORDER

concentration suffers because her mind wanders. Tr. 175.Finally, Plaintiff testified that she feels anxious when having to interact with strangers but that she is fine being around groups of people as long as she does not have to interact with them. Tr. 175.

In her function report, Plaintiff reported that she suffers from insomnia and always feels tired. Tr. 403. She experiences stress from dealing with tenants at her work and she struggles to maintain focus. Tr. 403. Plaintiff reported that she gets distracted during conversations, that she does not follow written instructions well, and that she must have spoken instructions repeated. Tr. 408. She reported that she gets along well with people but does not handle stress or changes in routine very well. Tr. 407–09. Plaintiff further reported that her shoulders are always sore which makes it hard to reach things. Tr. 408. She reported that she needs to rest a few minutes after walking a single block, but she is able to go on small hikes. Tr. 407–09.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 28. Specifically, the ALJ discounted Plaintiff's subjective complaints because they were inconsistent with her activities of daily living and the objective medical evidence in the record and because her treatment has been largely conservative.

1. **Daily Living**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not,

however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112–13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

Here, the ALJ discounted Plaintiff's subjective symptom testimony because she "indicated she could perform adequate self-care, prepare simple meals, do household chores, and go out to the store." Tr. 29. However, the ALJ did not explain how any of these activities undermine Plaintiff's testimony, nor did the ALJ expand on any other activities of daily living that would support this conclusion. Because the ALJ did not explain her reasoning, this fails to provide a specific, clear and convincing basis upon which to discount Plaintiff's subjective symptom testimony.

## 2. Conflicting with Medical Records

The ALJ also discounted Plaintiff's subjective symptom testimony based on alleged conflicts with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ found Plaintiff's allegations inconsistent with medical records showing variable range of motion, normal gait, intact muscle strength, sensation, and reflexes. Tr. 28–29. An independent review of the record does not support the ALJ's assessment.

Plaintiff's records show that she had moderate bilateral AC joint degenerative changes, right severe glenohumeral joint osteoarthritis with large marginal osteophyte formation and joint space narrowing the glenohumeral joint, aortic arch atherosclerosis, moderate to severe thoracic spine degenerative disc disease, greatest at C5-6 and C6-7, with disc height loss and osteophyte

formation, facet arthropathy at the left C4-5, and bilateral shoulder adhesive capsulitis. Tr. 633, 897, 899.

The ALJ relied on a December 2020 consultative examination that evaluated Plaintiff for pain in her neck and shoulders. Tr. 632. The ALJ noted that during this examination Plaintiff was able to move about the office without difficulty, had no pain mitigating behaviors, and although she had "some decreased range of motion in her shoulders," she had no laxity, no crepitus, no atrophy, no deformity, no swelling, and no misalignment. Tr. 28. The ALJ also noted that Plaintiff had 5/5 motor strength with intact sensation, reflexes, and muscle tone. However, Plaintiff argues, and the Court agrees, the ALJ overlooked information that directly contradicts her finding. During this same examination, the examiner noted that Plaintiff had "mechanical impairment of the shoulders with range of motion," which meant she was "only able to work at chest height or lower" and "would not be able to work over shoulder height for sure." Tr. 633. The examiner also noted that impingement testing was positive with O'Brien's test, that her reflexes were only 2/4 throughout her upper extremities, and that sensation was "intact to pinwheel" rather than generally. Tr. 633. The ALJ either overlooked or misstated these test results in her assessment.

Furthermore, the ALJ noted that while Plaintiff complained of bilateral shoulder pain with weakness radiating into her neck, she also denied any numbness or tingling. Tr. 28, citing Tr. 665, 677, 730, 880, 892. However, the evidence cited by the ALJ includes a single instance of denial of numbness or tingling as well as a report taken out of context, while the others contain no denial or are duplicate records of the same visit. Tr. 665, 730–31. The same record evidence cited by the ALJ contains reports of muscle weakness, abnormal motor strength and tone with Plaintiff's left arm weaker than her right, limited range of motion, positive Hawkins'

7 – OPINION AND ORDER

test, positive Neer's test, positive scouring maneuver, positive empty can test, and positive lift off test. Tr. 730–31.

The ALJ acknowledged that Plaintiff did exhibit some tenderness to palpation, variable range of motion in her neck and shoulders, and a positive empty can test, but found she had full range of motion in her joints, normal balance, normal gait, no edema, no cyanosis, no neurological deficits, intact coordination, intact distal pulses, and 5/5 muscle strength with intact sensation and reflexes. Tr. 28, citing Tr. 567–68, 652, 670, 699, 703, 707, 715, 722, 727, 731, 739, 785, 814, 818, 825, 832, 902, 904 (duplicate records omitted). While Plaintiff often has normal balance and gait without edema and cyanosis, no neurological deficits, intact coordination, intact distal pulses, and a single instance of 5/5 muscle strength in her arms while having weakness and pain in her shoulders, it is unclear how any of this relates to the pain she experiences in her neck or the limited range of motion in her shoulders, especially considering that Plaintiff's complaints and diagnoses were limited to her upper extremities. Those same records also noted repeated complaints of fatigue and loss of concentration and focus.

Accordingly, because the ALJ ignored record evidence that supported Plaintiff's testimony of pain in her neck and shoulders, muscle weakness and decreased reflexes in her upper extremities, and limited range of motion in her shoulders, and because the ALJ failed to explain how the cited evidence was inconsistent with Plaintiff's complaints and objective testing, this was not a clear and convincing reason to discount Plaintiff's testimony.

3. **Conservative Treatment**

The ALJ also found that Plaintiff had only received conservative treatment. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the ALJ noted that Plaintiff's treatment included naturopathic therapy, physical therapy, TENS therapy, anti-inflammatories, cannabis drops, steroids, and prescription pain medication. Tr. 28, citing Tr. 699, 731, 836, 901. Based on this treatment, the ALJ concluded that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." The ALJ's reasoning, however, is unsupported.

The ALJ did not explain what the expected treatment would be, nor did the ALJ provide evidence that more aggressive treatment was available. *See Lapeirre-Gutt v. Astrue*, 382 Fed.App'x. 662, 664 (9th Cir. 2010) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist"). Therefore, the ALJ was not justified in relying on conservative treatment as a basis to discount plaintiff's subjective symptom testimony.

## II. Medical Opinions

Plaintiff argues the ALJ failed to properly evaluate the medical opinions of Drs. Michael Henderson, D.O., and Joel Klein, M.D., as well as the medical opinion of Rebecca Meek, WHNP-BC. Because Plaintiff filed his application after March 27, 2017, revised regulations regarding the

evaluation of medical source opinions apply to his claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

The ALJ found the opinions of Dr. Michael Henderson, Dr. Joel Klein, and Rebecca Meek, WHNP-BC, only somewhat persuasive. Because the ALJ failed to address the

supportability or consistency of these medical opinions, the ALJ's findings here are not supported by substantial evidence. *See Woods*, 32 F.4th at 787 (noting that under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

Regarding Dr. Henderson, the ALJ noted that she "has considered the analysis and conclusions set forth by the consultative examiner," and that because Dr. Henderson had not seen the imaging studies, his assessed limitations were only "somewhat persuasive." Tr. 29. The ALJ ended her analysis there. Not only does she not discuss Dr. Henderson's findings, she also does not explain what parts of his analysis she found "somewhat persuasive," or why it mattered that he had not seen Plaintiff's imaging despite providing a comprehensive physical examination. The ALJ failed to provide anything even resembling the required analysis of supportability and consistency, much less a way for this court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1103 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

The ALJ's assessment of Dr. Klein's and NP Meek's opinions was similarly lacking. The ALJ did not provide any discussion of Dr. Klein's findings, nor did she provide any reasoning or cite to any evidence demonstrating that Dr. Klein's opinion is only somewhat persuasive. The ALJ also did not discuss NP Meek's findings, nor did she cite to any evidence or explain why she found the opinion only somewhat persuasive The ALJ erred by not addressing the supportability and consistency of these medical opinions.

### III.     Lay Witness Testimony

Finally, Plaintiff argues the ALJ erred by rejecting the lay witness statements of Plaintiff's mother and former manager. *See* Tr. 411, 440. Generally, "[l]ay testimony as to a claimant's

symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ ... must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The ALJ acknowledged that these third-party statements exist, and then stated that she "has considered these supportive statements and observations regarding the claimant's impairments and associated decreased work capacity when determining the above residual functional capacity." Tr. 30. The ALJ provided no further reasoning. The ALJ did not discuss what the lay witnesses stated nor how the statements were supposedly "considered" when determining Plaintiff's RFC. The ALJ erred by failing to give germane and specific reasons for rejecting the lay testimony.

**IV.    Remedy**

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273,

1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ committed harmful error in discounting Plaintiff's subjective symptom testimony and in rejecting the medical opinions of Dr. Henderson, Dr. Klein, and NP Meek. Credited as true, Plaintiff's testimony and the discounted medical opinions, combined with the vocational expert's testimony, establish that Plaintiff is disabled under the Act. Plaintiff testified that when she was working, she would need to take additional unscheduled time off. Tr. 167–68. Dr. Klein and NP Meek both opined that Plaintiff would likely be off task 25% of the time and would miss four or more days of work a month. Tr. 870, 875. The vocational expert testified that, in his experience, a person who would be off task for ten percent of a workday or who would miss more than one day a month would be unable to retain competitive employment. Tr. 179–80. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

//

//

//

13 – OPINION AND ORDER

## **CONCLUSION**

The decision of the Commissioner is REVERSED and this matter is REMANDED for calculation of benefits.

IT IS SO ORDERED.

DATED this 26th day of March, 2023.

                                        ___s/Michael J. McShane_____
                                                     Michael McShane
                                             United States District Judge